UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Viber Media S.à r.l., f/k/a Viber Media, Inc., <br><br> Plaintiff, <br><br> v. <br><br> NxtGn, Inc., Next Group Holdings, Inc., Next Communications, Inc., and Cuentas, Inc., <br><br> Defendants. | Civil Action No.: 18-cv-618 (RJS) <br><br> **Jury Trial Demanded** |

## FIRST AMENDED COMPLAINT

Plaintiff Viber Media S. à r.l., formerly known as Viber Media, Inc. ("Viber" or "Plaintiff"), by and through its undersigned counsel, Meister Seelig & Fein LLP, as and for its First Amended Complaint against Defendants NxtGn, Inc., Next Group Holdings, Inc., Next Communications, Inc., and Cuentas, Inc. (collectively, the "Defendants"), alleges as follows.[1]

## NATURE OF ACTION

1. This is an action for breach of contract. Specifically, Defendants have failed to reimburse Plaintiff's attorneys' fees and costs arising from a litigation as required pursuant to a fee-shifting provision in a non-disclosure and confidentiality agreement. As a result of such breach, Plaintiff has been damaged and respectfully seeks recompense as set forth herein.

## PARTIES

2. Plaintiff Viber Media S. à r.l. is a société à responsabilité limitée organized and existing under the laws of the Grand Duchy of Luxembourg, with its principal place of business at

---

[1] Pursuant to Rule 15.1 of the Electronic Case Filing Rules & Instructions, attached as Exhibit 1 is a copy of the Court's Order allowing Plaintiff to file this First Amended Complaint.

2, rue du Fossé, Luxembourg, Grand Duchy of Luxembourg, L-1536.  Plaintiff was previously known as Viber Media, Inc., a corporation organized under the laws of Panama, before migrating to Luxembourg and changing its corporate form and name to Viber Media S. à r.l.

3.      Upon information and belief, Defendant NxtGn, Inc. is a Florida corporation with its principal place of business at 19 W. Flagler Street, Suite 507, Miami, FL  33130 (hereinafter, "NxtGn").

4.      Upon information and belief, Defendant Next Group Holdings, Inc. is a Florida corporation with its principal place of business at 19 W. Flagler Street, Suite 507, Miami, FL 33130 (hereinafter, "NGH"), which was incorporated on September 21, 2005.  NGH is a public company, the stock of which is traded over the counter.  Upon information and belief, in or around September 2018, NGH changed its corporate name to Cuentas, Inc.

5.      Upon information and belief, Defendant Next Communications, Inc. is a Delaware corporation with its principal place of business at 19 W. Flagler Street, Suite 507, Miami, FL 33130 (hereinafter, "Next Communications").

6.      Upon information and belief, Defendant Cuentas, Inc., formerly known as Next Group Holdings, Inc., is a Florida corporation with its principal place of business at 19 W. Flagler Street, Suite 507, Miami, FL  33130 (hereinafter, "Cuentas").  Cuentas is a public company, the stock of which is traded over the counter.

7.      According to NGH's filings with the U.S. Securities and Exchange Commission ("SEC"), NxtGn is a subsidiary of NGH, now Cuentas. *See* NGH's 10Q Report for the nine-month period ended September 30, 2017 filed with the SEC on or about November 20, 2017 (the "November 20, 2017 10 Q"), a copy of which is attached as **Exhibit A** hereto, at 8.  According to NGH, NGH (now Cuentas) owns 65 percent of NxtGn. *Id.*

2

8.      According to NGH, both NxtGn and Next Communications are affiliates of NGH (now Cuentas). *See* Exh. A at 12; *see also* NGH 8-K dated May 18, 2016 filed with the SEC, a copy of which is attached as **Exhibit B** hereto (the "May 18, 2016 8-K"), at 2.

9.      According to NGH, Next Communications is controlled by the CEO of NGH, Arik Maimon. *See* Exh. A at 29.

10.     Upon information and belief, as of June 22, 2012, the significance of which is further discussed below, NxtGn was a wholly-owned subsidiary of Next Communications.

11.     Upon information and belief, on or about December 31, 2015, as part of a corporate merger and reorganization, Next Communications transferred and/or sold NxtGn, and/or substantially all assets thereof, to NGH.  Upon information and belief, the alleged assets transferred to NGH by Next Communications through such transaction included, without limitation, what NxtGn and NGH refer to as "AVYDA", the "NxtGn Proprietary Services" and the "NxtGn App".

12.     Upon information and belief, less than one year following the transfer of substantially all of NxtGn and/or NxtGn's assets to NGH, Next Communications, on or about December 21, 2016, filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code in United States Bankruptcy Court for the Southern District of Florida, Case No.16-26776-RAM (the "Bankruptcy Proceeding").  Upon information and belief, the Bankruptcy Proceeding is ongoing as of the filing of this First Amended Complaint.

13.     According to NGH, notwithstanding the Chapter 11 filing of Next Communications on December 21, 2016, NGH has relied on Next Communications to fund NGH's operations. NGH stated as much in its November 20, 2017 10 Q, as follows: "The Company has had extensive dealings with related parties including those in which our Chief Executive Officer [Arik Maimon] holds a significant ownership interest as well as an executive position during the nine months

5727/123/7544624.v3

ended September 30, 2017 and 2016. Due to our operational losses, the Company has relied to a large extent on funding received from Next Communications, Inc., an organization in which our Chief Executive Officer and Chairman holds a controlling equity interest and our Chief Executive Officer holds an executive position." *See* Exh. A at 25.

14.     According to NGH's publicly reported financials, as of September 30, 2017, NGH owed Next Communications – which NGH identified as a "related party," $3,119,851. *Id.* at 25.

15.     In light of the automatic stay of legal proceedings against Next Communications due to its Chapter 11 status in the Bankruptcy Proceeding, Plaintiff initially did not name Next Communications as a party to this action.  However, on January 23, 2018, Plaintiff filed a Proof of Claim against Next Communications in the Bankruptcy Proceeding.  A true and correct copy of such Proof of Claim is attached as **Exhibit C** hereto.

16.     By Order dated January 30, 2019, the Bankruptcy Proceeding Court confirmed Next Communications' Second Plan of Reorganization filed on November 19, 2019 (the "Bankruptcy Confirmation Order").  A true and correct copy of the Bankruptcy Confirmation Order is attached as **Exhibit D** hereto.

17.     Paragraph I of the Bankruptcy Confirmation Order states as follows:

> The Plan expressly adopts and incorporates by reference the provisions provided by the Court's Order [dated June 29, 2018] Overruling Debtor's Second Objection to Claims (Claim No. 19 filed by Viber Media Sarl (ECF No. 186)), and in no way stays, releases, discharges, or enjoins any of Viber Media Sarl's claims against the Debtor, any successor in interest, and any affiliated entities, including but not limited to NxtGn, Inc. and Next Group Holdings, Inc.  Upon completion of Debtor's plan payments on behalf of Viber Media Sarl's Allowed Claim No. 19, such claim shall be discharged as to the Debtor only, pursuant to the Plan.  The Plan payments made to Viber Media Sarl shall be escrowed with Viber Media Sarl's current counsel, Akerman LLP, rather than prior counsel, Berger Singerman LLP.

4

Exh. D at 8, ¶ I.

18.     A true and correct copy of the Bankruptcy Proceeding Court's Order Overruling Debtor's Second Objection to Claims dated June 29, 2018 (the "June 2018 Bankruptcy Order") is attached as **Exhibit E** hereto.  Paragraph 3 of the June 2018 Bankruptcy Order states, among other things, as follows: "To the extent necessary relief from 11 U.S.C. §362 is GRANTED to permit Viber to liquidate through to judgment any and all of its claims against the Debtor before the NY Courts."  Exh. E at 2, ¶ 3.

## JURISDICTION AND VENUE

19.     Subject matter jurisdiction for this action arises under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Viber and Defendants NxtGn, NGH, Next Communications and Cuentas, and the amount in controversy exceeds $75,000.00.

20.     Personal jurisdiction for this action arises under a Non-Disclosure and Confidentiality Agreement dated as of June 22, 2012 (the "NDA"), a copy of which is attached as **Exhibit F** hereto.

21.     While the NDA was executed by Viber and Next Communications, the NDA defines the term "Party" as "…either entity executing this Agreement and any subsidiary, affiliate and/or parent company of such entity." *Id.* at 1.

22.     The NDA purported to protect the "Proprietary Information" (as defined in the NDA) of each of the "Parties". *Id.* The NDA states: "WHEREAS, the Parties hereto agree that to enable the Parties to use the foregoing information for assessing possible business transactions between the Parties, it may be necessary to disclose certain of such information on a confidential basis. NOW THEREFORE, the Parties agree as follows:" *Id.*

5

23.     Accordingly, by the express terms of the NDA, Next Communications and Viber, and any and all of their respective subsidiaries, affiliates and/or parent companies, were all "Parties" to the NDA. *See* Exh. F, at 1, ¶ 1(b).

24.     As set forth above, at the time that Next Communications entered into the NDA on or about June 22, 2012, NxtGn was a wholly-owned subsidiary of Next Communications.

25.     As set forth above, Next Communications and NxtGn continue to be affiliates of one another, and affiliates of Defendant NGH.

26.     As set forth above, NGH is the parent corporation of NxtGn.

27.     As set forth above, NGH is now Cuentas.  *See* NGH's 10Q Report for the nine-month period ended September 30, 2018 filed with the SEC on or about December 19, 2018, a copy of which is attached as **Exhibit G** hereto, at 9.

28.     Based on the foregoing, Defendants NxtGn, NHG, Next Communications and Cuentas are "Parties" as defined in the NDA, and they each benefited from, and are bound by, the terms of the NDA.

29.     Paragraph 10 of the NDA states: "Any lawsuit or other legal proceeding shall be brought and maintained in the state or federal courts located within New York County in the State of New York, and the parties hereto expressly agree to the personal jurisdiction of those state or federal courts, and waive any objection thereto, including without limitation, objection based upon improper or inconvenient venue." *See* Exh. F at 3, ¶ 10.

30.     Accordingly, by virtue of Defendants NxtGn, NGH, Next Communications and Cuentas being "Parties" to the NDA and legally bound by the terms thereof, and pursuant to the express venue-selection terms of the NDA, this Court has personal jurisdiction over Defendants

6

in connection with any and all disputes arising under the NDA.  This action constitutes a dispute arising under the NDA.

31.     As further discussed below, jurisdiction for this action also arises pursuant to the Opinion and Order dated September 30, 2017 issued by United States District Court Judge Richard J. Sullivan in the federal action captioned *Next Communications, Inc. and NxtGn, Inc., v. Viber Media, Inc.*, 2017 WL 4402540 (S.D.N.Y. 2017) (the "District Court Action").  A true and correct copy of Judge Sullivan's Opinion and Order is attached as **Exhibit H** hereto (the "Summary Judgment Order").

32.     Venue is proper in this District pursuant to the NDA and the Summary Judgment Order.

33.     Defendants NxtGn and Next Communications acknowledged that jurisdiction and venue are proper in this district by commencing and prosecuting the District Court Action against Viber in this District.

**FACTUAL ALLEGATIONS**

34.     On June 22, 2012, Next Communications and Viber entered into the NDA. *See* Exh. F.

35.     Paragraph 11 of the NDA states as follows: "If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, *the prevailing party shall be entitled to reasonable attorney's fees and paralegal fees, costs and expenses, including fees and costs at the appellate level, in addition to any other relief to which it may be entitled.*" [Emphasis added]. *Id.* at 3-4.

36.     In their Amended Complaint filed in the District Court Action, Next Communications and NxtGn alleged, *inter alia*, as follows:

(a)     Next, through its subsidiary NxtGn, controlled an alleged video-based telecommunications platform, referred to in the Amended Complaint as "AVYDA", the "NxtGn Proprietary Services" and the "NxtGn App". *See* the Amended Complaint filed in the District Court Action, a true and correct copy of which is attached as **Exhibit I** hereto (the "Next Complaint"), at ¶¶ 8 – 16.

(b)     The "Proprietary Information" protected from disclosure and use under the NDA allegedly included AVYDA, the NxtGn Proprietary Services and the NxtGn App; *See, e.g.,* Exh. I, ¶¶ 33-38; 58 – 71;

(c)     NxtGn "…developed the proprietary technology used in AVYDA…." Exh. I, ¶ 12;

(d)     NxtGn "…developed a unique method for various software and proprietary network technologies to interact in order to provide proprietary services (the "NxtGn Proprietary Services")…." Exh. I, ¶ 15;

(e)     NxtGn and Next Communications "…combined the NxtGn Proprietary Services with video conferencing technology that it licensed from Vidyo, Inc. to develop an app (the "NxtGn App")." Exh. I, ¶ 16;

(f)     An alleged presentation to Viber by Telerix "…contained information related to NxtGn Proprietary Services, which Telerix provided to Viber with Next's consent, and pursuant to the NDA between Next and Viber." Exh. I, ¶ 33;

(g)     "The NxtGn Proprietary Services, the Celebrity Event Management business idea, and related information shared with Viber during the duration of the NDA are Proprietary Information, were designated as such, and were novel to Viber." Exh. I, ¶ 64; and

5727/123/7544624.v3

(h)     Viber allegedly breached the NDA by using and disclosing the Proprietary

Information in a manner prohibited thereby. *See, e.g.,* Exh. I, ¶¶ 58 – 71; *see also* Prayer for Relief.

37.     Thus, although Next Communications signed the NDA, NxtGn in the District Court

Action sought to benefit from the NDA by having its parent/affiliate Next Communications

enforce the terms thereof to protect NxtGn's own alleged Proprietary Information.

38.     In its May 18, 2016 8-K (*see* Exh. B hereto), NGH announced that its Board of

Directors had created a new class of "Preferred Stock" and declared a special stock dividend tied

directly to the outcome of Next Communications' and NxtGn's District Court Action against

Viber.   In other words, NGH pledged to its shareholders that, in the event its affiliates Next

Communications and NxtGn were victorious against Viber in the District Court Action, their

affiliate and/or parent NGH would share the proceeds of any damages award against Viber in the

District Court Action with holders of common stock in NGH as of a particular record date, *i.e.*,

June 10, 2016.

39.     Upon information and belief, NGH declared the special stock dividend pegged to

the outcome of the District Court Action in order to drive up the demand for, and value of, NGH's

publicly traded penny stock.

40.     In its May 18, 2016 8-K, NGH described the special stock dividend as follows:

> The Class D Preferred Stock must be redeemed within six
> months [sic] within six (6) months (or as soon thereafter
> permitted by law) following final resolution of *the*
> *Corporation's affiliates lawsuit against Viber Media, Inc.*
> *(Next Communications, Inc. and Nxtgn, Inc. v. Viber*
> *Media, Inc.)* which is, as of the date of this resolution,
> pending in U.S. District Court for the Southern District of
> New York or any successor or other lawsuit relating to the
> subject matter thereof in which the Corporation (or
> successor-in-interest) is named as a plaintiff (the
> "Lawsuit").  The Designation fixes the redemption price of
> each share of class D Preferred stock as the greater of par

5727/123/7544624.v3

> value or the amount obtained by dividing (a) 9.03 percent
> of the net proceeds to the Corporation of the Lawsuit after
> payment of fees and expenses incurred in connection with
> such law suit and the resolution of any creditor claims
> against Next Communications and all taxes on net income
> accrued or paid with respect to such amount, by (b) the
> total number of Class D Preferred stock issued and
> outstanding as of the Redemption Date…. In the event of
> an unfavorable result, we will still redeem the Class D
> preferred stock at par within sixth months of the case's
> final disposition." [Emphasis added]

*See* Exh. B at 2.

41.     NGH's preferred stock offering shows that NGH, now Cuentas, does not respect corporate formalities, and that NGH intended to immediately take possession of, and distribute to NGH shareholders, any damages awarded to Next Communications and/or NxtGn in the District Court Action.  Upon information and belief, NGH/Cuentas has not yet informed its shareholders or the public of the Summary Judgment Order or the outcome of the appeal therefrom in the Court of Appeals.

42.     In its May 18, 2016 8-K pertaining to its preferred stock offering, NGH acknowledged that (i) Next Communications and NxtGn are affiliates of NGH, and (ii) NGH would recoup the attorneys' fees and costs it had incurred in connection with the District Court Action before paying the special stock dividend.  *Id.*

43.     On October 11, 2016, Viber filed a motion for summary judgment as to all claims in the District Court Action that were not previously dismissed by the Court in response to Viber's prior motion to dismiss. *See* the Court's partial dismissal order in the District Court Action dated March 30, 2016, a copy of which is attached as **Exhibit J** hereto.  As part of its summary judgment motion, Viber sought to dismiss Count I of the Amended Complaint which alleged that Viber had breached the NDA.

44.     As part of its motion for summary judgment, Viber sought, among other things, the entry of a judgment against Next Communications and NxtGn, jointly and severally, in the amount of Viber's attorneys' fees, costs and expenses which it had incurred in connection with defending itself in the District Court Action, pursuant to the prevailing-party clause set forth in Paragraph 11 of the NDA. *See* Exh. F, ¶ 11.

45.     In his Summary Judgment Order, Judge Sullivan granted Viber's motion for summary judgment in its entirety, dismissing all claims in Next Communications and NxtGn's Amended Complaint, including Count 1 for alleged breach of the NDA. *See* Exh. H.

46.     Defendants NxtGn and Next Communications appealed the Summary Judgment Order to the United States Court of Appeals for the Second Circuit in *Next Communications, Inc. and NxtGn, Inc. v. Viber Media, Inc.*, Case No. 17-3511.  On December 11, 2018, the Court of Appeals, by Summary Order, affirmed the Summary Judgment Order in Viber's favor.  A true and correct copy of the Court of Appeals' Summary Order is attached as **Exhibit K** hereto.

47.     In light of the District Court's Summary Judgment Order and the Court of Appeals' Summary Order, Viber was the prevailing party in the District Court Action and in the appeal pursuant to Paragraph 11 of the NDA.

48.     In reference to Viber's fee-shifting claim under Paragraph 11 of the NDA, Judge Sullivan wrote in the Summary Judgment Order: "This case appears to fall within the plain terms of that provision, and indeed, Next does not appear to contend otherwise…. And where 'a contract authorizes an award of attorneys' fees,' as the NDA does here, such award is mandatory." *See* Exh. H at *9. [Citation omitted]

5727/123/7544624.v3

49.    In the Summary Judgment Order, Judge Sullivan stated that where the Court was only just then granting summary judgment to Viber, Viber's request for fees under the NDA was "premature," reasoning that "[a]s of this moment, neither party has had the opportunity to exercise its rights under the fee-shifting provision, and neither party is in breach of that provision." *Id*. [Citations omitted]

50.    "Accordingly," Judge Sullivan concluded, "if Viber wishes to seek attorney's fees pursuant to the NDA, it should first demand them from Next; if Next refuses the demand, then Viber may file a complaint for breach of the fee-shifting provision, either in this district, where it will likely be deemed related and assigned to this Court's docket (*see* Local Rule 13), or elsewhere." *Id.* [Citations omitted]

51.    On October 30, 2017, Next Communications, which was still embroiled in its Chapter 11 Bankruptcy Proceeding, and NxtGn filed a Notice of Appeal of the Summary Judgment Order, a true and correct copy of which is attached as **Exhibit L** hereto.

52.    Pursuant to Judge Sullivan's instructions in the Summary Judgment Order, Viber demanded by letter dated December 26, 2017 to Annette Hasapidis, appellate counsel for NxtGn and Next Communications, that in view of its status as the prevailing party in the District Court Action, pursuant to Paragraph 11 of the NDA, that Next Communications, NxtGn, and their subsidiaries, affiliates and parent companies, including, without limitation, NGH, immediately pay Viber all attorneys' fees, paralegal fees, costs and expenses incurred by Viber in the District Court Action.   A true and correct copy of Viber's December 26th letter, with the wire instructions redacted, is attached as **Exhibit M** hereto (the "Viber Demand Letter").

53.     As set forth in the Viber Demand Letter, the legal fees, costs and expenses incurred by Viber in defending itself in the District Court Action, as of the date of such letter, totaled $527,782.10.  Viber demanded that the Next Communications and Defendants immediately pay Viber such amount.  *See* Exh. M.

54.     In the Viber Demand Letter, Viber also noted that should it prevail in Next Communications and NxtGn's appeal of the Summary Judgment Order, Viber would seek from Defendants and their subsidiaries, affiliates and parent companies all attorneys' fees, paralegal fees, costs and expenses incurred by Viber in connection with the appeal of the Summary Judgment Order, as expressly provided in Paragraph 11 of the NDA.  *Id.*

55.     By email dated January 2, 2018, Ms. Hasapidis responded to the Viber Demand Letter.  A true and correct copy of Ms. Hasapidis' email is attached as **Exhibit N** hereto.

56.     In her January 2nd email, Ms. Hasapidis alleged that Next Communications was the "sole signer" to the NDA, and that Next Communications "has no subsidiaries or parent companies."  She further stated that in light of Next Communications' bankruptcy filing, "[a]ny claims, such as that demanded by your letter, must be made in the bankruptcy proceeding and receive the approval of the Trustee."  Ms. Hasapidis' email marked the first time that Next Communications had notified Viber that it had filed for bankruptcy.  *See* Exh. N.

57.     By using the phrase "sole signer" in her response to the Viber Demand Letter, Ms. Hasapidis blatantly attempted to rewrite the NDA by avoiding use of the term "Party," defined in the NDA as "either entity executing his Agreement and any subsidiary, affiliate and/or parent company of such entity".  *See* Ex. F, ¶ 1(b).  Upon information and belief, Ms. Hasapidis' intent in using the term "sole signer" was to attempt to provide legal justification for her baseless position

13

that only Next Communications, which had filed for bankruptcy protection, is responsible to pay Viber's legal fees and costs incurred in the defense of the frivolous District Court Action.

58.     In her response, while Ms. Hasapidis asserted that Next Communications "has no subsidiaries or parent companies" (*see* Exh. N) and is therefore solely responsible for paying prevailing-party fees under the NDA, she failed altogether to address, or even attempt to explain away, the following inconvenient facts:

(a)     According to NGH's own public SEC filings cited above, NxtGn and NGH (now Cuentas) are "affiliates" of Next Communications, and therefore are "Parties" to the NDA;

(b)     As of the date of the NDA, NxtGn was owned by, and was a subsidiary of, Next Communications;

(c)     Next Communications was not the only losing party in the District Court Action – NxtGn, a named party, was also a losing party, and as such, like Next Communications, is jointly and severally responsible for Viber's attorneys' fees and costs;

(d)     Next Communications and NxtGn took the position in the District Court Action that the alleged Proprietary Information at issue under the NDA included AVYDA, the NxtGn Proprietary Services, and the NxtGn App, each of which were allegedly owned and/or controlled by NxtGn;

(e)     Next Communications' alleged sale or transfer of NxtGn to NGH did not change the status of NxtGn in the District Court Action; nor did such transfer extinguish NxtGn's obligations to pay Viber its attorneys' fees and costs incurred in the defense of the District Court Action;

(f)     NGH (now Cuentas) is currently the parent of NxtGn, and NxtGn is an operating subsidiary of NGH/Cuentas; as such, NGH/Cuentas, whose subsidiary NxtGn

5727/123/7544624.v3

prosecuted the District Court Action against Viber, is a "Party" to the NDA and is obligated to pay prevailing-party fees and costs to Viber in light of Viber's total victory in the District Court Action, as well as in the subsequent appeal therefrom;

(g)     In its SEC filings, NGH offered its shareholders the opportunity, through the purchase of its publicly traded stock, to bet on the outcome of NGH's affiliates NxtGn's and Next Communications' bogus lawsuit against Viber;

(h)     Next Communications and NxtGn continued prosecuting the District Court Action following the bankruptcy filing of Next Communications on or about December 21, 2016, and filed and pursued the appeal, and, upon information and belief, following such bankruptcy filing, NGH did not modify the terms of the special litigation-related dividend it had declared;

(i)     According to NGH's SEC filings, prior to and after the bankruptcy filing of Next Communications, Next Communications, which is controlled by NGH's CEO Arik Maimon, periodically loaned significant sums of cash to NGH; in turn, NGH recorded hundreds of thousands of dollars in interest expense, the amount of which was forgiven by Next Communications and recorded as additional paid-in capital (*see* Exh. A, n. 7, at 25); and

(j)     Upon information and belief, the legal fees and costs being incurred in connection with Next Communications' and NxtGn's appeal of the Summary Judgment Order are being paid for by NGH/Cuentas or NxtGn, or a combination thereof, not by Next Communications, which has filed for bankruptcy protection.

59.     Accordingly, for all the reasons set forth above, Next Communications was not the only losing "Party" under the NDA in the District Court Action and in the subsequent Court of Appeals proceeding – Defendants NxtGn, NGH and Cuentas, which the facts clearly demonstrate are affiliates of Next Communications, were also losing "Parties" under the NDA, and Viber is

therefore entitled as the prevailing party under the NDA to reimbursement from each of the Defendants, jointly and severally, of such fees and costs, including interest thereon.

60.     In addition, as Viber has commenced this action to enforce the terms of the NDA against the Defendants as Parties thereto, should Viber prevail in the instant case, it shall be entitled under Section 11 of the NDA to its reasonable attorneys' fees, paralegal fees, costs and expenses incurred in commencing and prosecuting the instant action against Defendants.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

61.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if fully set forth herein.

62.     The NDA is a valid and binding agreement.

63.     Plaintiff performed each and every one of its obligations under the NDA.

64.     Defendants NxtGn, NGH, Next Communications and Cuentas are "Parties" to the NDA and are legally bound by the terms thereof.

65.     Defendants NxtGn, NGH, Next Communications, and Cuentas were the losing parties in the District Court Action, as well as in the unsuccessful appeal of the Summary Judgment Order by NxtGn and Next Communications in the United States Court of Appeals for the Second Circuit.

66.     Pursuant to Paragraph 11 of the NDA, Defendants NxtGn, NGH, Next Communications and Cuentas are jointly and severally liable for the immediate reimbursement of all reasonable attorneys' fees, paralegal fees, costs and expenses incurred by Plaintiff in connection with defending against the District Court Action, and in opposing NxtGn's and Next's unsuccessful appeal of the Summary Judgment Order to the United States Court of Appeals for the Second Circuit.

67.     Defendants, despite having received a written demand from Plaintiff, have failed and refused to pay Viber any portion of the $527,782.10 in attorneys' fees and expenses that Viber incurred in the defense of the District Court Action.

68.     Defendants' failure to pay Viber the attorneys' fees, paralegal fees, costs and expenses it incurred in defending itself against the frivolous District Court Action constitutes a material breach of the NDA.

69.     In addition, by failing and refusing to pay Viber any portion of said $527,782.10 despite having received a written demand therefor from Plaintiff, Defendants have repudiated their duty under Section 11 of the NDA to reimburse Viber its reasonable attorneys' fees, paralegal fees, costs and expenses as the prevailing party in NxtGn's and Next's unsuccessful appeal of the Summary Judgment Order to the United States Court of Appeals for the Second Circuit.

70.     Defendants' repudiation of their duties under Section 11 of the NDA constitutes a material anticipatory breach of the NDA establishing that Defendants have no intention of reimbursing Viber its reasonable attorneys' fees, paralegal fees, costs and expenses incurred in opposing NxtGn's and Next's unsuccessful appeal of the Summary Judgment Order to the United States Court of Appeals for the Second Circuit.

71.     Viber's attorneys' fees, paralegal fees, costs and expenses incurred to date in the District Court Action, the appeal thereof, and this action, total at least $713,855.04.

72.     As a direct result of Defendants' failure to pay the amounts due Plaintiff under the NDA and repudiating all of their obligations under Section 11 thereof, Plaintiff has been damaged in amount to be determined at trial, but in no event less than $713,855.04.

5727/123/7544624.v3

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against

Defendants, jointly and severally, and in favor of Plaintiff, as follows:

(a)     On the First Cause of Action, an award of damages in Plaintiff's favor, and

against Defendants, in an amount to be determined at trial, but in no event less than $713,855.04;

(b)     Awarding Plaintiff punitive damages;

(c)     Awarding Plaintiff pre-judgment and post judgment interest to the maximum

extent provided by law;

(d)     Awarding Plaintiff its attorneys' fees, paralegal fees, costs and expenses incurred

in this action, pursuant to Paragraph 11 of the NDA; and

(e)     Granting Plaintiff such other and further relief as the Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury of all issues so triable.


Dated: February 6, 2019                              **MEISTER SEELIG & FEIN LLP**
New York, New York                                   By: /s/ Jeffrey P. Weingart
                                                     Jeffrey P. Weingart
                                                     Susan M. Schlesinger
                                                     125 Park Avenue, 7th Floor
                                                     New York, New York 10017
                                                     Telephone: (212) 655-3500
                                                     Email: jpw@msf-law.com
                                                             sms@msf-law.com
                                                     Attorneys for Plaintiff

5727/123/7544624.v3

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2019 a copy of the foregoing First Amended Complaint was filed electronically using the Court's ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's ECF system or by other means to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's ECF System.


Dated: February 6, 2019                    /s/ Susan M. Schlesinger
                                           Susan M. Schlesinger

5727/123/7544624.v3