UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIBER MEDIA S.À R.L., F/K/A VIBER
MEDIA, INC.,

               Plaintiff,

               -v-

NXTGN, INC., NEXT GROUP HOLDINGS,
INC., NEXT COMMUNICATIONS, INC.,
AND CUENTAS, INC.,

               Defendants.

No. 18-cv-618 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

      Plaintiff Viber Media S.à r.l., f/k/a Viber Media, Inc. ("Viber"), brings this action against NxtGn, Inc., Next Group Holdings, Inc. ("NGH"), Cuentas, Inc. (collectively, "Defendants"), and Next Communications, Inc., alleging breach of contract. Now before the Court is Defendants' motion to dismiss the Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion is GRANTED.

I. BACKGROUND[1]

      On June 22, 2012, Viber and Next Communications entered into a Non-Disclosure and Confidentiality Agreement to protect the parties' proprietary information in connection with their pursuit of potential business opportunities involving videoconferencing technology. (Am. Compl. Ex. F ("NDA").) Although only Viber and Next Communications executed the NDA, it defined

---

[1] The following facts are taken from the Amended Complaint, filed on February 6, 2019 (Doc. No. 38 ("Amended Complaint" or "Am. Compl.")), and the exhibits attached thereto. In ruling on Defendants' motion, the Court has also considered Defendants' memorandum of law (Doc. No. 58 ("Mem.")), Viber's opposition (Doc. No. 60 ("Opp'n")), and Defendants' reply (Doc. No. 62 ("Reply")).

the term "Party," to which various provisions of the NDA applied, as "either entity executing this Agreement and any subsidiary, affiliate and/or parent company of such entity." (*Id.* at 1.) The NDA required the parties to "[r]estrict disclosure of Proprietary Information solely to any person or entity with a 'need to know' the Proprietary Information and not disclose such Proprietary Information to any other third parties." (*Id.* at 2.) The NDA also included a fee-shifting provision ("Section 11"), which stated: "If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and paralegal fees, costs and expenses, including fees and costs at the appellate level, in addition to any other relief to which it may be entitled." (*Id.* at 3–4.)

In the intervening years, Viber and Next Communications' relationship soured, and in 2014, Next Communications and NxtGn sued Viber, alleging that Viber was using information it had learned about NxtGn's proprietary services to develop its own videoconferencing technology. *Next Commc'ns, Inc. v. Viber Media, Inc.*, No. 14-cv-8190 (RJS), 2017 WL 4402540, at *2 (S.D.N.Y. Sept. 30, 2017). Specifically, Next Communications individually asserted claims for breach of contract and misappropriation of a business idea, and Next Communications and NxtGn together asserted claims for misappropriation of trade secrets and unjust enrichment. (Am. Compl. Ex. I ("Initial Action Am. Compl.") at 11–16.) The Court granted Viber's motion to dismiss the misappropriation of a business idea claim and subsequently also granted Viber's motion for summary judgment on the remaining claims. *Next Commc'ns*, 2017 WL 4402540, at *1–2. Next Communications and NxtGn appealed the Court's summary judgment on October 30, 2017. (Am. Compl. ¶ 51; *id.* Ex. L.)

While the appeal was pending, Viber issued a letter in light of "its status as the prevailing party in the District Court Action," demanding that "Next Communications, NxtGn, and their

subsidiaries, affiliates and parent companies, including, without limitation, NGH, immediately pay Viber all attorneys' fees, paralegal fees, costs and expenses incurred by Viber in the District Court Action." (Am. Compl. ¶ 52; *id.* Ex. M.) In addition to the $527,782.10 in legal fees, costs, and expenses that Viber incurred in the district court, Viber also announced that it intended to seek appellate fees and costs should it prevail in Next Communications' and NxtGn's appeal of the Court's summary judgment. (Am. Compl. ¶¶ 53–54; *id.* Ex. M.) Appellate counsel for Next Communications and NxtGn responded on January 2, 2018, asserting that Next Communications was the "sole signer" of the NDA, that Next Communications had "no subsidiaries or parent companies," that Next Communications had filed for "bankruptcy protection," and therefore, that "[a]ny claims . . . must be made in the bankruptcy proceeding." (Am. Compl. Ex. N.) Though the letter did not mention details, Next Communications had filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Florida on December 21, 2016. (Am. Compl. ¶ 12.)

On January 23, 2018, Viber filed a Proof of Claim against Next Communications in the bankruptcy proceeding, seeking the payment of $527,782.10 for "[p]revailing party fees and costs" under Section 11 that resulted from Next Communications' lawsuit. (*Id.* ¶ 15; *id.* Ex. C at 2.) Although Next Communications objected to Viber's claim, the bankruptcy court overruled those objections and granted Viber permission to "liquidate through to judgment any and all of its claims against [Next Communications] before the NY Courts." (*Id.* Ex. E at 2.)

On January 24, 2018, Viber filed the original Complaint in this action against NxtGn and NGH, asserting a claim for breach of contract and seeking a declaratory judgment that NxtGn and NGH were jointly and severally liable for Viber's fees and costs incurred in litigating the initial district court action, the appeal of that action, and this case. (Doc. No. 1.) Beginning on April 4,

2018, this case was stayed at the parties' joint request pending the appeal of the initial district court action. (Doc. No. 22.) After the Second Circuit affirmed the Court's summary judgment ruling on December 11, 2018, *Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46 (2d Cir. 2018), the Court lifted the stay in this action (Doc. No. 28).

Viber filed an Amended Complaint on February 6, 2019 that removed the request for a declaratory judgment and added Next Communications and Cuentas as defendants. (Am. Compl.) Defendants thereafter filed a motion to dismiss the Amended Complaint, asserting that (1) NGH should be dismissed as a defendant because it has changed its name to Cuentas and is no longer a separate entity; (2) this Court lacks personal jurisdiction over Cuentas under Rule 12(b)(2); and (3) Viber has failed to state a claim for which relief could be granted under Rule 12(b)(6). (Doc. Nos. 57, 58.)

## II. Discussion

### A. NGH Must Be Dismissed as a Separate Party.

Defendants assert that NGH changed its corporate name to Cuentas in August 2018, and that therefore "all claims as against NGH in the Amended Complaint should be deemed alleged as against Cuentas, and NGH should be dismissed from this action as a separate party." (Mem. at 8–9.) The Amended Complaint itself states that NGH changed its name to Cuentas (*see* Am. Compl. ¶¶ 4, 6), and Viber does not dispute the veracity of that fact in its opposition brief, often referring to claims made against "NGH/Cuentas" (*see* Opp'n at 1, 11). Accordingly, the Court grants Defendants' request to dismiss NGH as a separate party from this action. *Cf. Datskow v. Teledyne, Inc., Cont'l Prods. Div.*, 899 F.2d 1298, 1302 (2d Cir. 1990) (permitting amendment of caption to name proper defendant where plaintiff's mistake was "one of mislabeling"). The Court will

consider all claims and contentions Viber makes against NGH as if they were asserted against Cuentas.

### B. Viber Has Failed to Allege Personal Jurisdiction Over Cuentas.

"The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." *Wilder v. News Corp.*, No. 11-cv-4947 (PGG), 2015 WL 5853763, at *5 (S.D.N.Y. Oct. 7, 2015) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). "However, where a court rules on a 12(b)(2) motion based on pleadings and affidavits, the plaintiff is only required to make a prima facie showing of jurisdiction over the defendant." *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 440 (S.D.N.Y. 2008); *see Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). For the purposes of resolving a Rule 12(b)(2) motion, a district court must construe the pleadings and affidavits in the light most favorable to the plaintiff. *Chloé*, 616 F.3d at 163. A court may rely on additional materials outside the pleadings when ruling on Rule 12(b)(2) motions. *See Visual Scis., Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 58 (2d Cir. 1981); *see also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

Personal jurisdiction may be either general or specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). General jurisdiction requires that a defendant's "affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (internal quotation marks and brackets omitted). Specific jurisdiction requires that a defendant have minimum contacts with the forum jurisdiction, such as when a defendant "'purposefully directed' his activities at the forum and the litigation 'arises out of or relates to' those activities." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 136 (2d Cir. 2014) (brackets and alterations omitted) (quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  If such "minimum contacts" with the forum are established, the Court must still be satisfied that "the assertion of personal jurisdiction would comport with fair play and substantial justice."  *Id.* (internal quotation marks omitted).

Viber asserts that the Court has personal jurisdiction over Cuentas in this case by virtue of Cuentas being a party to the NDA, which contains an express venue-selection provision for "state or federal courts located within New York County in the State of New York." (Am. Compl. ¶¶ 29–30.)  Viber further asserts that even if Cuentas is not deemed to be a party to the NDA, Cuentas nevertheless demonstrated an intent to be bound by the NDA and directly benefited from it.  (*Id.* ¶¶ 38–42; Opp'n at 21–23.)  Finally, Viber argues that the Court has personal jurisdiction over Cuentas because Cuentas "directly participated in the [initial] District Court Action" by providing one of its employees as a Federal Rules of Civil Procedure 30(b)(6) deposition witness.  (Opp'n at 23–24.)  The Court disagrees as to each of Viber's arguments and concludes that Cuentas was not a party to the NDA or subject to its terms for any reason.

1. Cuentas Was Not a Party to the NDA.

Although Viber concedes that Next Communications and Viber were the only signatories to the NDA, Viber nevertheless insists that Cuentas was a party to the NDA, and that it therefore consented to personal jurisdiction in this Court.  (Am. Compl. ¶¶ 23–28, 64.)  In making this argument, Viber relies on three crucial facts:  (1) the NDA expressly extended to both parties' "subsidiaries, affiliates and/or parent companies" (*id.* ¶ 23); (2) at the time that Next Communications executed the NDA on June 22, 2012, NxtGn was a wholly-owned subsidiary of Next Communications (*id.* ¶¶ 24–25); and (3) Next Communications and NxtGn are currently

6

affiliates of one another and of Cuentas, and Cuentas is now the parent corporation of NxtGn (*id.* ¶¶ 25–27).

But under New York law, "[a]bsent explicit language demonstrating the parties' intent to bind future affiliates of the contracting parties, the term 'affiliate[s]' includes only those affiliates in existence at the time the contract was executed." *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 246 (2014); *see also Wellington Shields & Co. v. Breakwater Inv. Mgmt. LLC*, No. 14-cv-7529 (RJS), 2016 WL 5414979, at *6 (S.D.N.Y. Mar. 18, 2016). The Second Circuit has similarly explained that where a contractual provision referred only to "affiliates" in the present tense, the contract applied only to present, not future, affiliates because "[n]othing in th[e] definition [of affiliates] indicates the inclusion of future rather than present" affiliates. *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 130 (2d Cir. 2001).

Viber does not set forth factual allegations sufficient to infer that Cuentas was an affiliate of Next Communications or NxtGn at the time the NDA was executed in 2012. Indeed, the only factual allegations that Viber offers in this regard are that (1) Cuentas was incorporated on September 21, 2005 (Am. Compl. ¶ 4), and (2) on December 31, 2015, two-and-a-half years after the NDA was signed and more than a year after the initial district court action was commenced, Next Communications "transferred and/or sold NxtGn" to Cuentas (*id.* ¶ 11). But the mere fact that Cuentas was in existence at the time the NDA was signed and is currently the parent corporation of NxtGn and an affiliate of Next Communications says nothing about whether Cuentas was affiliated with NxtGn and/or Next Communications at the time the NDA was executed. *See Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 389–90 (S.D.N.Y. 2019) (denying plaintiff's attempt to enforce an NDA against an entity that was not an affiliate at

7

the time the NDA was signed as contrary to New York contract law).  Viber's claim that Cuentas was a party to the NDA on this basis, therefore, fails.

2.  Cuentas Did Not Directly Benefit from the NDA.

Viber next maintains that Cuentas sought to benefit from the NDA, and is therefore subject to its terms, because it "declared a special stock dividend tied directly to the outcome of Next Communications' and NxtGn's District Court Action against Viber."  (Am. Compl. ¶¶ 38–40; Opp'n at 22–23.)  According to Viber, Cuentas "would share the proceeds of any damages award against Viber in the District Court Action" with its shareholders (Am. Compl. ¶ 38), thereby "benefit[ing] from the terms of the NDA" (Opp'n at 23).  Once again, the Court disagrees with Viber's overly ambitious theory of personal jurisdiction.

To be sure, a nonsignatory can be held to the terms of a contract where it has knowingly directly benefited from it.  *See MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001) ("[W]here a company knowingly accepted the benefits of an agreement with an arbitration clause, even without signing the agreement, that company may be bound by the arbitration clause." (internal quotation marks omitted)); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Am. Boat Co.*, No. 11-cv-6804 (PAE), 2012 WL 527209, at *4 (S.D.N.Y. Feb. 17, 2012) ("[A] party which is a non-signatory to a contract, but which nonetheless receives a direct benefit from that contract, is estopped from seeking exclusion from provisions of the contract.").  But Viber's factual allegations regarding Cuentas's stock dividend to its shareholders do not plausibly allege that Cuentas "knowingly" sought to receive a "direct benefit" from the NDA such that the Court may hold Cuentas subject to the NDA's terms.  As the owner of a 65% interest in NxtGn, Cuentas would expect to receive a portion of any award NxtGn won in the initial district court action as a matter of straightforward business mechanisms.  (Am. Compl. Ex. G at 9; Mem. at 14–

15.) There is nothing nefarious about Cuentas's plan to pass along this income to its shareholders, nor does it serve to establish that Cuentas sought to directly benefit from the NDA. Put simply, a parent corporation's letter to its shareholders about what it plans to do in the event of a successful litigation involving a subsidiary does not subject the parent to the terms of the subsidiary's NDA.

### 3. Cuentas Did Not Submit to the Court's Jurisdiction Merely by Supplying a Rule 30(b)(6) Witness in the Underlying Litigation.

Viber last asserts that Cuentas "directly participated in the [initial] District Court Action" by providing one of its employees as a witness in response to Viber's Rule 30(b)(6) notice of deposition to Next Communications and NxtGn. (Opp'n at 23–24.) Viber contends that because Cuentas "clearly previously submitted to the jurisdiction of this Court, on a voluntary basis, for the purpose of pressing [Next Communications' and NxtGn's] underlying case," Cuentas "should now be estopped from arguing that the Court does not have jurisdiction over it with respect to the present action." (*Id.* at 24.) Viber's contention is once again unavailing.

First, Cuentas never submitted to a deposition in the initial district court action. Instead, it produced an employee to testify at the Rule 30(b)(6) deposition of Next Communications and NxtGn. (*See* Doc. No. 61 Ex. K.) That employee acknowledged that he worked for Cuentas, explicitly stated that he was not appearing on behalf of Next Communications, and explained that he was appearing on behalf of NxtGn because that corporation was part of the Cuentas "composition." (*See id.*) Thus, Cuentas did not participate in the initial district court action by submitting to the deposition on its own behalf.

Second, even if the Rule 30(b)(6) witness had appeared in the deposition on Cuentas's behalf, personal jurisdiction over Cuentas in this case would still be lacking, since participation in a single deposition is insufficient to convey personal jurisdiction over a defendant in New York. Federal courts have personal jurisdiction over a defendant in accordance with the long-arm statute

of the state in which they sit, *see Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996), and the law is clear that a single deposition that occurs in New York is not sufficient to establish personal jurisdiction under the New York Civil Practice Law and Rules, *see Sea Tow Servs. Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 779 F. Supp. 2d 319, 324–25 (E.D.N.Y. 2011) (determining that conducting a single deposition in New York is not sufficient to support personal jurisdiction).

*   *   *

Because Viber fails to sufficiently plead that the Court has personal jurisdiction over Cuentas under any of its grab bag of theories, the Court grants Cuentas's motion for dismissal pursuant to Rule 12(b)(2).

### C. Viber Has Failed to State a Claim for Breach of Contract Against NxtGn.

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556

U.S. at 678.  Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."  *Id.* at 570.

Viber claims that NxtGn's "failure to pay Viber the attorneys' fees, paralegal fees, costs and expenses it incurred in defending itself against the [initial] District Court Action constitutes a material breach of the NDA."  (Am. Compl. ¶ 68.)  Viber alleges that NxtGn was a party under the NDA and is therefore bound by its terms (*id.* ¶ 64); that NxtGn was a losing party in the initial district court action and in the appeal of the Court's summary judgment order (*id.* ¶ 65); and that consequently, Section 11 requires NxtGn to reimburse Viber's attorneys' fees and costs (*id.* ¶ 66).  Defendants concede that NxtGn was a party to the NDA but maintain that because the NDA's "fee-shifting provision is limited to recovery of the 'prevailing party's' attorneys' fees incurred in enforcing the NDA's terms," and because "NxtGn advanced no NDA-based claims against" Viber, Viber "cannot be said to have 'prevailed' over NxtGn with respect to the 'enforcement' of the NDA."  (Mem. at 17–18.)

Even where a party may be liable for attorneys' fees pursuant to a contract, attorneys' fees that may be shifted are limited to the specific scope of the fee-shifting provision in that contract. *See Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.*, No. 11-cv-1456 (THK), 2011 WL 6935295, at *4 (S.D.N.Y. Dec. 29, 2011) (holding that because the attorneys' fees provisions of a contract stated that the prevailing party could recover reasonable attorneys' fees related to litigation commenced to secure or protect rights under the agreement, costs related to the termination of the agreement and prelitigation costs were not recoverable); *Emerald Advisors, Inc. v. Incredibleart.com, Inc.*, No. 01-cv-4177 (NRB), 2001 WL 1670990, at

\*1 (S.D.N.Y. Dec. 28, 2001) (explaining that attorneys' fees should not be awarded for claims that did not arise from the agreement at issue).

Here, the NDA's fee-shifting provision is limited to actions brought "to enforce or interpret the terms of th[e] Agreement." (NDA at 3.) Although NxtGn was a party to the NDA, it did not bring a breach of contract claim against Viber. (*See* Initial Action Am. Compl. at 11–13.) Instead, NxtGn brought claims only for misappropriation of trade secrets and unjust enrichment, claims that could have been brought even if the NDA had never existed and that relied on common law principles. (*Id.* at 13–14, 16.) Moreover, the Court granted summary judgment to Viber on those claims for reasons entirely unrelated to the NDA. Viber prevailed over NxtGn because NxtGn could not identify any proprietary information that Viber allegedly misappropriated; Viber did not win the lawsuit because its use of NxtGn's proprietary information was allowed by the NDA. *See Next Commc'ns*, 2017 WL 4402540, at \*4 (granting summary judgment to Viber on NxtGn's misappropriation of trade secrets claim because NxtGn "failed both to identify its alleged trade secrets with sufficient specificity and to adduce adequate evidence that its information was in fact secret" (emphasis omitted)); *id.* at \*8 (granting summary judgment to Viber on NxtGn's unjust enrichment claim because, in relevant part, NxtGn could not "identify any trade secrets or proprietary information with sufficient particularity, [so] it [could not] adequately identify an unjustly appropriated benefit"). Therefore, the claims on which Viber prevailed over NxtGn did not require the "enforce[ment] or interpret[ation] [of] the terms of" the NDA. As a result, any fees Viber expended in the prior litigation are not recoverable through a breach of contract claim against NxtGn under the NDA.

Viber's only retort is to contend that "while the . . . Amended Complaint [in the initial district court action] recited that Count 1 for Breach of Contract was 'brought by Next

12

[Communications] against Viber', in reality, Next Communications asserted the breach of contract claim against Viber under the NDA to protect the 'Proprietary Information' of NxtGn." (Opp'n at 8.) Viber maintains that it prevailed over NxtGn within the scope of the NDA's fee-shifting provision "because neither [Next Communications nor NxtGn] could show that Viber had received, used, or disclosed the claimed Proprietary Information of NxtGn." (*Id.* at 9.) It further asserts that "[t]he fact that NxtGn relied on its parent Next Communications to assert their breach of contract claim is of no moment with respect to establishing NxtGn's liability for Viber's attorneys' fees and costs under the NDA." (*Id.* at 11.) However, none of Viber's protestations can get around the fact that Next Communications brought a breach of contract claim in the initial action to protect its own interest in NxtGn's proprietary information, while NxtGn brought common law misappropriation of trade secrets and unjust enrichment claims. (Initial Action Am. Compl. at 11–16.)

Accordingly, because Viber did not prevail over NxtGn in a suit "to enforce or interpret the terms of" the NDA, Viber fails to state a claim for breach of contract as against NxtGn.[2] The Court thus grants Defendants' motion to dismiss Viber's breach of contract claim against NxtGn under Rule 12(b)(6).

CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is GRANTED. The Court dismisses Viber's breach of contract claim as against Cuentas

---

[2] To the extent that Viber contends that it may nevertheless pursue a breach of contract claim against NxtGn for Next Communications' alleged breach of Section 11 – because NxtGn is an affiliate of Next Communications and a party to the NDA – nothing in the NDA even remotely suggests that such liability is contemplated. Although the NDA provides that affiliates and subsidiaries of Next Communications and Viber are subject to the NDA's conditions for the treatment of confidential information, the NDA does not suggest that non-breaching subsidiaries are obliged to indemnify their breaching affiliates or subsidiaries. Put simply, the Court finds that a promise to indemnify cannot "be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 74 N.Y.2d 487, 491–92 (1989).

for lack of personal jurisdiction under Rule 12(b)(2), and as against NxtGn for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  IT IS FURTHER ORDERED THAT the remaining parties, Viber and Next Communications, shall submit a joint letter setting forth their views concerning the next steps in this litigation no later than July 1, 2020.  The Clerk of Court is respectfully directed to terminate the motion pending at document number 57.

SO ORDERED.

Dated:       June 15, 2020
             New York, New York

                                       RICHARD J. SULLIVAN
                                       UNITED STATES CIRCUIT JUDGE
                                       Sitting by Designation